**In re Allyson F. REITER, Debtor.**

**Bankruptcy No. 91–10269–M.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

April 23, 1991.

Ray Hendren, Austin, Tex., Standing Chapter 13 Bankruptcy Trustee.

Charles R. Nettles, Austin, Tex., for debtor.

William Leighton, Austin, Tex., for I.R.S., respondent.

## MEMORANDUM DECISION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the motion of Debtor for Sanctions against the United States, Internal Revenue Service ("IRS/Service") for Violation of the Automatic and Co–Debtor Stays. Upon consid- eration thereof, the court now enters this memorandum decision and order thereon.

## JURISDICTION

This matter is before the court on a motion brought under Sections 362 and 1301 of Title 11 of the Bankruptcy Code. In addition, reference is made in the motion for relief under Section 105. The court has original jurisdiction of this matter. 28 U.S.C. §§ 1334(a), (d), 157(a). This matter is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

## UNDERLYING FACTS

The debtor is a married woman employed as a clerk for a convenience store. She filed chapter 13 bankruptcy shortly after learning that the Internal Revenue Service intended to levy on bank accounts for fail- ure to pay personal income taxes. After the bankruptcy filing, the IRS proceeded to levy on her husband's salary, precipitating this motion. The debtor has filed a chapter 13 plan which, by its terms, will pay the IRS in full within two years or less, and will be funded by a pay order against her salary. The plan has not yet been con- firmed, but confirmation was pending with- in a month of the hearing on this motion. The debtor's budget reflects both the debt- or's and her husband's income and, accord- ing to the debtor's counsel, demonstrates that the plan represents the debtor's "best efforts" within the meaning of Section 1325(b), i.e., all of the debtor's net disposa- ble income (after setting aside enough mon- ey from joint income for support of herself and her family) is being devoted to the plan.

The debtor's husband is in the construc- tion business and works days. The debtor works an early evening shift. The bank- ruptcy petition was filed on an emergency basis and only the wife could make it into the lawyer's office, so the filing covered only her. There is no indication of an attempt by the debtor to somehow "shel- ter" either her husband or his income from bankruptcy.

The IRS has agreed to stay the levy on the debtor's husband's income pending a

resolution of this motion, as the issue is of sufficient importance to the Service to make this essentially a test case. By the same token, the debtor has acknowledged that it does not so much seek attorney's fees or sanctions against the IRS so much as it desires the release of the levy against some $1,000 in income of the nondebtor spouse.

## POSITIONS OF THE PARTIES

The debtor argues that the IRS levy violates the co-debtor stay of Section 1301(a), which protects nondebtors jointly liable with the debtor on a consumer debt. The debtor describes joint income tax liability of individuals such as these, who are not engaged in a business, as a debt that cannot be described as business or commercial debt and, therefore, such debt must be consumer. As further support, the debtor notes that all of their discretionary income is used to pay for consumer-type obligations, that is, when such monies are not used to pay income taxes.

The debtor also adds that the IRS levy threatens the very success of the debtor's plan, because it reduces the total net income available to the family from the husband's salary, undermining the budget the debtor has submitted in support of her plan. Though not directly argued, the debtor also maintains that the court should intervene, using its powers under Section 105, to prevent what she describes as an exercise of bureaucratic excess.

The Service responds that the co-debtor stay does not apply to them, as this is not a consumer debt within the meaning of the statute. In response to questions from the court, the Service also maintains that the nondebtor's post-petition salary is not property of the estate under Section 1306(a), so that Section 362(a) also does not apply to bar the levy.

## ANALYSIS

The co-debtor stay on its face would protect the nondebtor spouse in a community property state such as Texas with respect to all "community debt," if the debt is also a "consumer debt." *See* Tex. Family Code, § 5.61;[1] 11 U.S.C. § 1301(a). Joint tax liability fits within the definition of community debt. In addition, the Internal Revenue Code imposes joint liability on married taxpayers who file jointly. 26 U.S.C. § 6013. The co-debtor stay will thus protect the non-filing spouse in this case, unless the debt in question is not a "consumer debt," within the meaning of Section 1301(a). 11 U.S.C. §§ 1301(a), 101(7).[2]

The debtor emphasizes the salutary function of the co-debtor stay to argue for a broad construction of the term "consumer debt." She points to the House Report, which states that the section was

... designed to protect a debtor operating under a chapter 13 individual repayment plan case by insulating him from indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 426 (1977), U.S.Code Cong. & Admin.News

---

1. (b) Unless both spouses are personally liable as provided by Section 4.031 of this code, the community property subject to a spouse's sole management, control, and disposition is not subject to:
 (1) any liabilities that the other spouse incurred before marriage; or
 (2) any nontortious liabilities that the other spouse incurs during marriage.
 (c) The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by him or her before or during marriage.
 Tex.Fam. Code, § 5.61 (West pamphl. ed. 1988). Section 4.031, to which this section of the Family Code refers, in turn provides:

 (a) A spouse is personally liable for the acts of the other spouse only if:
 (1) the spouse acts as an agent for the other spouse; or
 (2) the spouse incurs a debt for necessaries under Section 4.02 of this code.
 (b) Except as provided by Section 5.61 of this code, community property is not subject to liability that arises from an act of a spouse.
 (c) A spouse does not act as an agent for the other spouse solely because of the marriage relationship.
 Tex.Fam. Code, § 4.031 (West pamphl. ed. 1988).

2. " '[C]onsumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose...." 11 U.S.C. § 101(7).

1978, pp. 5787, 6381. The Senate Report, however, observed that

> [t]he automatic stay under this section pertains only to the collection of a consumer debt, defined by section 101(7) of this title to mean a debt incurred by an individual primarily for a personal, family, or household purpose. Therefore, not all debts owed by a chapter 13 debtor will be subject to the stay of the codebtor . . .

S.Rep.No. 989, 95th Cong., 2d Sess. 138 (1978), U.S.Code Cong. & Admin.News 1978, p. 5924. Taxes may be personally owed, as the debtor argues, but that does not render them debts incurred for a personal, family or household purpose. Tax debt is involuntarily imposed for a public purpose. It does not qualify as consumer debt within the meaning of the Bankruptcy Code. 11 U.S.C. § 101(7); *In re Harrison,* 82 B.R. 557, 558 (Bankr.D.Colo.1987): *Stann v. Mid American Credit Union,* 39 B.R. 246, 248 (Bankr.D.Kan.1984).

The debtor urges that a broad construction of the term will achieve the ends Congress intended in its enactment, namely, the prevention of heavy-handed pressure tactics by creditors on non-debtor co-obligors. The debtor adds that the Service is in an especially advantageous position to use its extraordinary powers to assure preferential treatment, in the process riding roughshod over a clearly expressed congressional intent to curtail precisely such conduct.

■ No matter how compelling the debtor's argument might be, it founders on the shoals of straightforward statutory construction. If Congress had indeed intended to enact the intentions expressed in the House Report (quoted above), it could simply have omitted the modifying word "consumer" from the statute, as the debtor's argument applies equally to *any* creditor who is fortunate enough to have a co-obligor. Congress intentionally circumscribed the scope of the co-debtor stay by limiting its application to *consumer* debt, in much the same way it limited the application of other sections of the Bankruptcy Code. *See, e.g.,* 11 U.S.C. §§ 523(d), 522(f)(2), 707(b). This court is obligated to be faithful to the words Congress chose to use in its enactment when those terms are clear, notwithstanding the equities urged by the debtor. *In re Harrison,* 82 B.R. at 558 ("... a tax liability is in no way a consumer debt...."). As one court accurately observed in a similar context,

> Courts that have reached the opposite determination have expressed a laudable concern for the rehabilitation of debtors, and for the need to allow the bankruptcy court broad latitude in accomplishing the objectives of title 11. ... However, in so doing such courts have independently weighed the competing policy objectives at stake, thereby substituting their own judgment for that of Congress.

*In re Pressimone,* 39 B.R. 240, 245 (N.D.N.Y.1984). Accordingly, Debtor's request for relief based upon 11 U.S.C. § 1301(a) must be denied.

The more difficult question is whether the Service is stayed by Section 362(a). That section operates as a stay, applicable to all entities, of

> (2) the enforcement, against the debtor or against *property of the estate,* of a judgment obtained before commencement of the case ...
> (3) any act to obtain possession of *property of the estate* or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against *property of the estate;*

11 U.S.C. § 362(a)(2), (3), (4) (emphasis added). To apply this section to the case at hand, we must determine whether the non-debtor spouse's income is property of the estate.

■ We turn first to Section 541(a)(2), which describes the extent of the estate's interest in community property. The section provides as follows, in applicable part:

> (a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> . . . . .
>
> (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

11 U.S.C. § 541(a)(2). Clearly, all of the non-debtor spouse's income received as of the filing of the bankruptcy case is property of the estate to the extent liable for taxes owed the Internal Revenue Service, as such income is liable for an allowable claim within the meaning of Section 541(a)(2)(B).[3] Section 1306(a) expands the "property of the estate" concept in Chapter 13 cases to include`

(1) all property of the kind specified in [Section 541] that the debtor acquires after the commencement of the case ...; and

(2) earnings from services performed by the debtor after the commencement of the case ...

11 U.S.C. § 1306(a)(1), (2). Subsection (2) does not apply in this case because the earnings in question are not from services performed by the debtor.

■ Subsection (1), however, will apply if it can be said that the debtor has "acquired" her spouse's post-petition income within the ambit of Section 541(a)(2)(B). The legislative history to this section is sparse, and offers no real guidance. Certainly the intent was that, in general, all property which comes into the hands of the debtor post-petition should be included both within the scope of both the automatic stay and the confirmation standards of Section 1325. Thus, for example, a personal injury judgment, or an inheritance, or a property received post-petition during the pendency of the case is property of the estate by virtue of Section 1306(a)(1). *See In re Lybrook*, 107 B.R. 611 (Bankr.N.D.Ind.1989)

(inheritance); *In re Perkins*, 111 B.R. 671 (Bankr.M.D.Tenn.1990) (sale proceeds); *In re McLaughlin*, 96 B.R. 554 (Bankr.E.D. Pa.1989) (deed of property to debtor); *In re Koresko*, 91 B.R. 689 (Bankr.E.D.Pa.1988) (recovery of damages); *In re Sokol*, 60 B.R. 294 (Bankr.N.D.Ill.1986) (cause of action); *In re Wood*, 23 B.R. 552 (Bankr.E.D. Tenn.1982) (pension benefits).

The foregoing examples are easily thought of as things a debtor can "acquire" within the meaning and intent of the statute. The notion that the debtor "acquires" income earned by the non-debtor post-petition solely by operation of Section 541(a)(2)(B) is less intuitively correct. Nonetheless, it would read too much into Congress' use of the term "acquire" to assume that Congress, by the mere use of that verb in Section 1306(a)(1), intended *sub rosa* to exclude one of the categories of property listed in Section 541, when the very thrust of Section 1306 is clearly to extend the reach of all of Section 541 (*"all* property of the kind specified in such section ..."*) beyond the petition date, in furtherance of the larger purpose of chapter 13. 11 U.S.C. § 1306(a)(1); *see In re Garner*, 13 B.R. 799, 803 (Bankr.S.D.N.Y.1981) ("the relief sought transcends the debtor's business activities and includes all of the debtor's personal assets, even property acquired after the filing of the Chapter 13 petition"); *In re Moore*, 22 B.R. 200, 202 (Bankr.M.D.Fla.1982) (describing the definitions of property of the estate as used in Section 1306 as "broad"); *see also In re Howell*, 4 B.R. 102 (Bankr.M.D.Tenn.1980).

■ Not long after Chapter 13 was enacted, courts struggled with whether chapter 13 plans could be funded with funds other than ordinary wages, such as pension benefits, social security benefits or AFDC payments. Most courts concluded that the term "wage earner" should not be read so strictly as to bar such recipients from chapter 13 relief, relying in part on

---

**3.** Section 541(a)(2)(A) is not sufficient to bring in this income, due to provisions of the Texas Family Code which make a spouse's individually earned income "sole management community property." Tex.Fam. Code, § 5.22(a)(1) (West pamphl. ed. 1988). Only the *debtor's* sole management community property comes into the estate under Section 541(a)(2)(A). The non-debtor spouse's sole management community property is definitionally not under the equal or joint management and control of the debtor and so does not come into the estate under Section 541(a)(2)(A).

this same section, Section 1306. *See, e.g., In re Hammonds,* 23 B.R. 674, 676 (Bankr. M.D.Ga.1982) (AFDC benefits); *In re Wood,* 23 B.R. 552 (Bankr.E.D.Tenn.1982) (retirement benefits); *In re Buren,* 4 B.R. 109 (Bankr.M.D.Tenn.1980) (social security benefits); *In re Howell,* 4 B.R. 102 (Bankr. M.D.Tenn.1980) (disability benefits). Commented the court in *Hammonds:*

> Section 1306(a)(1), in conjunction with section 541, allows a Chapter 13 debtor to include in the bankruptcy estate property acquired after the commencement of the case ... [i]n light of the purposes of section 541 and 1306, the Court finds that AFDC recipients have sufficient property interests in their AFDC payments to enable them to fund a Chapter 13 plan. Parents normally are able to spend AFDC funds as they see fit, for the benefit of the family unit. A Chapter 13 plan ... is another form of budgeting that a parent has elected for the benefit of the family unit.

*In re Hammonds,* 23 B.R. at 676. This court now concludes that equal latitude must be accorded Section 1306(a)(1) in its application to a nondebtor spouse's income, to the extent it would otherwise be property of the estate under Section 541(a)(2), for some of the same reasons spelled out in *Hammonds.* The income of the nondebtor spouse is clearly used by the family unit in its overall budgeting. Chapter 13 simply provides an overlay to that budgeting process which enables the financially strapped debtor to work out its difficulties under the protection of the automatic stay. *See In re Hammonds, supra.* Including the spouse's income as part of the estate property is consistent with these policy considerations.

For these reasons, this court now concludes that the nondebtor spouse's post-petition income, to the extent of the allowable claim of the Internal Revenue Service, is property of the estate acquired by the debtor, making it property of this chapter 13

estate under Section 1306(a)(1). By virtue of subsections (3) and (4) of Section 362(a), a prepetition creditor may not seek to obtain possession of such property, nor may it seek to create, perfect, or enforce a lien against such property. 11 U.S.C. § 362(a)(3), (4). This rule, as the IRS readily acknowledges, applies with equal force to the Service. *In re Loughnane,* 28 B.R. 940, 941 (Bankr.D.Colo.1983); *see also In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540 (2nd Cir.1989); *Bostwick v. United States,* 521 F.2d 741, 744 (8th Cir.1975).

 Accordingly, the Service is directed to release its levy against the husband's income.[4]

So ORDERED.

---

4. Sanctions will not be assessed against the Service in this case. The matter appears to have been one of first impression, and the Service was certainly permitted to "test the waters," just as could any other litigant. *See* Bankr.R. 9011 (discouraging sanctions in those cases in which a legal position is urged on the basis of a good

faith extension of the law). For the same reasons, the court declines to award attorneys' fees. In addition, the conduct of the Service can hardly be described as a "wilful" violation of the automatic stay, given the uncertainty of the law in this area, so that a sanction under Section 362(h) is inappropriate as well.