Filed:  January 7, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 95-2925
(CA-95-1199-AW, BK-931-6838-PM)

---

Robert J. Kestell,

Plaintiff - Appellant,

versus

Janet A. Kestell,

Defendant - Appellee.

---

O R D E R

---

The Court amends its opinion filed October 31, 1996, as follows:

On the cover sheet, section 3, line 4 -- the district court number is corrected to read "CA-95-1199-AW."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: ROBERT J. KESTELL,
Debtor.

ROBERT J. KESTELL,

No. 95-2925

Plaintiff-Appellant,

v.

JANET A. KESTELL,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-95-1199-AW, BK-931-6838-PM)

Argued: September 25, 1996

Decided: October 31, 1996

Before WILKINSON, Chief Judge, and WILKINS and
WILLIAMS, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Wilkins and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Edward Malcolm Kimmel, HAMBRIGHT & KIMMEL,
Washington, D.C., for Appellant. Irving Edward Walker, MILES &

STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee. **ON BRIEF:** Lisa B. Tancredi, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

Appellant Robert Kestell was denied a discharge in bankruptcy. The bankruptcy court found that Kestell had failed to list assets that were property of the estate and that such failure constituted a fraudulent concealment under 11 U.S.C. § 727. We need not decide whether the assets at issue were property of the estate because the bankruptcy court's findings amply support the conclusion that Kestell attempted to abuse the bankruptcy process so as to ensure that his former wife, appellee Janet Atkinson, could not collect a debt Kestell owed her. See 11 U.S.C. §§ 105, 707. Because we believe that both the bankruptcy court and district court acted properly to protect the integrity of the bankruptcy process, we affirm the judgment.

I.

On December 3, 1993, Janet Atkinson was granted a divorce, on grounds of desertion, from her husband of 27 years, Robert Kestell. The divorce judgment required Kestell to pay Atkinson alimony, support for three of the couple's five children, a lump-sum award, attorney's fees, and a share of profits from a rental property. Kestell earned $193,000 in 1993.

Thirteen days after the divorce judgment, Kestell filed for Chapter 7 bankruptcy relief. At a meeting of creditors held a month later, Kestell stated that he intended to reaffirm all of his debts except the dischargeable portion of his debt to Atkinson and a small credit card debt. Kestell also declared, "I don't want [Atkinson] to have anything." He swore under oath that to the best of his knowledge he had listed all of his assets and all of his debts on the bankruptcy schedules.

Kestell did not list, however, his anticipated receipt of an income tax reimbursement from his employer, Inter-American Development

2

Bank. Nor did he amend the schedule to add the reimbursement of approximately $13,000 when it was paid to him postpetition. Kestell also did not report or turn over to the bankruptcy trustee accrued sick leave benefits of $33,511.09 paid to him in March 1994. At the time of Kestell's bankruptcy petition, these sick leave benefits were available only upon retirement or resignation, but a change in company policy in March 1994 allowed Kestell to cash in the benefits he had earned up to that point. He first picked up the check, then tried to return it so he could cash the benefits later, then retrieved it and deposited the check in his checking account in Jamaica.

After a one-day trial, the bankruptcy court reached two conclusions. First, it determined that Kestell's interest in the sick leave benefits and tax reimbursement were property of the bankruptcy estate, and that Kestell should have amended his asset schedules accordingly and turned the money over to the trustee when he received it. Second, the court found that Kestell's choice not to list or turn over the assets evinced an intent to defraud a creditor, namely his ex-wife. Based on these findings, the bankruptcy judge found fraudulent concealment in violation of 11 U.S.C. § 727(a)(2)(B) and denied Kestell's petition. Kestell appealed to the United States District Court, which affirmed the bankruptcy judge's ruling.

II.

Kestell claims on appeal that the bankruptcy court committed a great injustice in his case. The court, he argues, penalized him either for legally correct conduct or for entirely innocent mistakes. It should be possible, he says, "to have an honest disagreement, even with a bankruptcy judge, about what is property of the estate." Above all, he insists, a court's bankruptcy powers must be exercised "liberally in favor of the debtor" and strictly against objections to a discharge. See Williams v. United States Fidelity & Guarantee Co., 236 U.S. 549, 554-55 (1915) (bankruptcy process designed "to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh").

This statement of the Code's objectives is correct as far as it goes, but it does not go far enough. In particular, it overlooks the fact that bankruptcy courts have traditionally drawn upon their powers of

3

equity to prevent abuse of the bankruptcy process and to ensure that a "case be commenced in `good faith' to reflect the intended policies of the Code." 2 L. King, Collier on Bankruptcy § 301.05[1], at 301-5 to 301-7 (1996). Such a good faith requirement

> prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."

In re Little Creek Development Co., 779 F.2d 1068, 1072 (5th Cir. 1986).

Indeed, Congress has made it clear within the Bankruptcy Code itself that misuse of the bankruptcy process should not be countenanced. Specific provisions throughout the Code provide remedies for abuses in each of the types of bankruptcy proceedings. In some Code provisions, enumerated circumstances of abuse are addressed. In others, general phrases such as "for cause" provide broad coverage for unenumerated instances of misuse.

Chapter 7, for example, affords a court the discretion to dismiss sua sponte a consumer debtor's case "if it finds that the granting of relief would be a substantial abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b). Further, section 727 lists ten specific grounds on which the judge should deny a Chapter 7 debtor discharge from his debts. These include situations in which the debtor has "with intent to hinder, delay, or defraud a creditor . . . transferred, removed, destroyed, mutilated, or concealed [property]"; "knowingly and fraudulently . . . made a false oath or account"; "failed to explain satisfactorily . . . any loss of assets"; or refused "to obey any lawful order of the court." 11 U.S.C. § 727(a)(2),(4),(5),(6).

Similarly, Chapter 11 bankruptcy cases may be dismissed for a lack of good faith, a requirement this court has found to be "implicit in § 1112(b)." Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir. 1989).

4

> On the basis of the soundly reasoned decisions of other courts, the clear purposes of the bankruptcy code and our reading of the relevant statutory provisions and rules, we hold that petitions for protection under the reorganization provisions of Chapter 11 must be filed in "good faith." If properly found not to have been, they may be summarily dismissed for that reason.

Id. at 700. Section 1112(b) also lists ten explicit grounds for dismissal or conversion to Chapter 7 of a Chapter 11 petition, including "inability to effectuate a plan," "unreasonable delay by the debtor that is prejudicial to creditors," and "material default by the debtor with respect to a confirmed plan." 11 U.S.C. § 1112(b)(2),(3),(8).

Good faith is also necessary for a Chapter 13 plan to be confirmed under section 1325(a). In re Solomon, 67 F.3d 1128 (4th Cir. 1995); Neufeld v. Freeman, 794 F.2d 149 (4th Cir. 1986). That section provides that plans may be confirmed only if "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Additionally, under section 1307, bankruptcy petitions filed under Chapter 13 may be dismissed or converted to Chapter 7 "for cause." Reasons constituting "cause" for dismissal include enumerated ones, such as unreasonable and prejudicial delay by the debtor or material default by the debtor, 11 U.S.C. § 1307(c)(1),(6), as well as judicially construed ones such as bad faith, In re Love, 957 F.2d 1350 (7th Cir. 1992).

Finally, overlaying these specific provisions is the broad grant of judicial power set forth in 11 U.S.C. § 105(a). That section authorizes bankruptcy courts to:

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

A leading commentator on bankruptcy law characterizes section 105 as "an omnibus provision phrased in such general terms as to be the

5

basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." 2 L. King, Collier on Bankruptcy § 105.01, at 105-3 (1996). The second sentence of section 105(a), added in 1986, was expressly intended to broaden the authority of bankruptcy courts to act, sua sponte, to promote the Code's provisions. See 132 Cong. Rec. S15074-05 (Oct. 3, 1986); In re Haddad, 68 B.R. 944, 949 (Bankr. D. Mass. 1987).

Section 105 is not, of course, unlimited. It cannot be invoked, for example, to achieve ends contrary to other specific Code provisions. Section 105 states, after all, that it empowers the court to "carry out the provisions of [the Bankruptcy] title." On the other hand, the power granted in section 105 is not a mere duplicate of that explicitly granted in other specific Code provisions. By its own terms, section 105 gives the court the additional power to "issue any order, process, or judgment necessary . . . to carry out the provisions of [Title 11]," (emphasis added) and to take any action, even at its own initiative, "to prevent an abuse of process." See In re Calder, 93 B.R. 739, 740 (Bankr. D. Utah 1988) (abuse of process defined as "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system"); In re Burrell, 148 B.R. 820, 824 (Bankr. E.D. Va. 1992) (abuse of process defined as the circumstance in which inaction by the court "would undermine the integrity of the bankruptcy system").

This court has seen "no reason to read into this language [of section 105] anything other than its plain meaning that a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code." In re Walters, 868 F.2d 665, 669 (4th Cir. 1989). Walters held that section 105 gives a judge the authority to hold a party in civil contempt of court, a conclusion also reached by other circuits. In re Ragar, 3 F.3d 1174, 1180 (8th Cir. 1993); In re Skinner, 917 F.2d 444, 447 (10th Cir. 1990). The plain meaning of section 105 goes beyond contempt of court power. It also grants judges the authority to dismiss a bankruptcy petition sua sponte for ineligibility, In re Hammers, 988 F.2d 32, 34-35 (5th Cir. 1993), for lack of good faith, In re Van Owen Car Wash, Inc., 82 B.R. 671, 674 (Bankr. C.D. Ca. 1988), or for one of the "causes" enumerated

6

in section 1112, <u>In re Finney</u>, 992 F.2d 43, 44 (4th Cir. 1993); <u>In re Erchak</u>, 152 B.R. 68 (Bankr. N.D. W. Va. 1993).

What Kestell overlooks, in sum, is that the Bankruptcy Code, both in general structure and in specific provisions, authorizes bankruptcy courts to prevent the use of the bankruptcy process to achieve illicit objectives. The right of debtors to a fresh start depends upon the honest and forthright invocation of the Code's protections. As the bankruptcy judge observed, "[a]ccuracy, honesty, and full disclosure are critical to the functioning of bankruptcy," and are "inherent in the bargain for the discharge." <u>See In re Mascolo</u>, 505 F.2d 274, 278 (1st Cir. 1974).

III.

A.

The question before us is whether the bankruptcy court made adequate findings under relevant provisions of the Code to support the denial of Kestell's discharge. Although the bankruptcy court addressed this case under the fraudulent concealment provision of section 727(a)(2), we think this petition is more appropriately dismissed under sections 707(b) and 105(a). Section 707(b) provides that a court "may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of [Chapter 7]." Kestell is an individual debtor, and more than half his debt is the lump-sum amount owed to his former wife from the divorce judgment. Since this debt was not incurred with a profit motive or in connection with a business transaction, it is considered "consumer debt" for purposes of section 707. <u>Matter of Booth</u>, 858 F.2d 1051, 1054-55 (5th Cir. 1988); <u>see</u> 11 U.S.C. § 101(8) (defining consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose"); <u>In re Palmer</u>, 117 B.R. 443 (Bankr. N.D. Iowa 1990) (lump-sum marital award "consumer debt" under section 707). The critical factor under section 707(b), therefore, is whether Kestell's actions constituted "substantial abuse" of Chapter 7. This court has previously adopted a "totality of the circumstances" approach to substantial abuse, with the recognition of "a strong indication that Section 707(b) was intended to explicitly recognize the

7

court's ability to dismiss a Chapter 7 petition for lack of good faith--when `the total picture is abusive.'" In re Green, 934 F.2d 568, 572 (4th Cir. 1991).

The record amply supports the conclusion that Kestell's behavior constituted both "substantial abuse" under section 707(b) and "abuse of process" under section 105(a). A major purpose of the bankruptcy process is the equitable distribution of a bankrupt's assets among creditors. See H.R. Rep. No. 1409, 75 Cong., 1st Sess. 17 (1937) (citing equitable distribution among creditors as "the fundamental purpose of the Act"); In re MortgageAmerica Corp., 714 F.2d 1266, 1275 (5th Cir. 1983) (same); see also 11 U.S.C. § 726 (detailing how property of the estate is to be equitably distributed). From early on in the bankruptcy process, Kestell clearly communicated that he did not desire the equitable distribution of his assets among all creditors and a fresh start free from debt. Instead, Kestell sought to avoid paying what he owes to his former wife while making good on his other financial obligations.

Kestell stated at the creditors' meeting that he intended to reaffirm all of his debts except his dischargeable debt to Atkinson and a small credit card debt. At the same meeting, Kestell declared, "I don't want [Atkinson] to have anything." He failed to list his sick leave benefit and tax reimbursement as assets, and failed to bring them to the trustee's attention when he received the money. He attempted to use the sick leave check, according to the bankruptcy judge,"to reimburse creditors he thought worthy of priority," and when Kestell discovered that was not possible, he tried to return the check to the company so it would not be available to the bankruptcy estate. The bankruptcy judge, who conducted the trial and observed the testimony and demeanor of the witnesses, including appellant Kestell, concluded that the above facts "suggest that the sole purpose of the filing was to avoid the payment of the sums owing to his ex-wife on account of the state court judgment." We find no evidence to dispute the bankruptcy court's conclusion.

B.

Kestell, however, would have us address whether his tax reimbursement and sick leave benefits were "self-evidently" property of

8

the bankruptcy estate. This determination would be necessary if we were resolving this appeal under section 727(a)(2), which sanctions debtors for, among other things, fraudulently concealing property of the estate. However, the bankruptcy judge's findings in this case amply support dismissal of the debtor's petition under both sections 105(a) and 707(b). Under these provisions, we need not definitively decide the question of whether the sick leave and tax reimbursement belonged to the bankrupt estate. Instead, we need only consider whether Kestell's handling of the two benefits, both of which were earned prior to the bankruptcy petition, evidenced a good faith invocation of the bankruptcy process.

Kestell argues that he relied on the advice of his attorney, who told him that listing the two assets in the bankruptcy filing was not necessary. The bankruptcy judge, however, found clear indication of fraudulent intent in Kestell's testimony sufficient to overcome any claim of good faith reliance on legal advice. Specifically, the court found that Kestell attempted to use his sick leave check to reimburse other creditors while keeping the check from Atkinson,"illustrat[ing] his intent to hinder, delay, or defraud his ex-wife."

Furthermore, even if Kestell was unsure at the time of filing whether the sick leave and tax benefits were part of the estate, he could have, at a minimum, disclosed to the trustee the fact that he had received these substantial funds so soon after the petition. This would have demonstrated his good faith efforts to comply with the bankruptcy process, and allowed a proper and open resolution of whether the funds should have been included as part of the estate. In re Krich, 97 B.R. 919, 924 (Bankr. N.D. Ill. 1988). The sick leave funds to this day remain unavailable despite the trustee's efforts to retrieve them.

Honesty and disclosure are essential to achieve the fundamental bankruptcy policy of equitable distribution among creditors. MortgageAmerica, 714 F.2d at 1275. Because favoritism of one creditor over another is antithetical to the goal of equitable distribution, the Bankruptcy Code cannot be used as a vehicle for advancing personal antagonisms against an ex-spouse. The bankruptcy court found repeatedly that Kestell's sole purpose for filing his petition was to favor certain creditors and defraud his ex-wife. Kestell's conduct was

9

an abuse of the bankruptcy process, and his petition for discharge from debt was properly denied.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

10