### In re Wilbur G. WESTBERRY, Debtor.

### Bankruptcy No. 397–10706–KL–13.

United States Bankruptcy Court, M.D. Tennessee.

April 22, 1998.

John M. Roberts, United States Attorney, Middle District of Tennessee, Lloyd E. Mueller, Special Assistant, United States Attorney, Nashville, TN, for United States.

Mark H. Westlake, Westlake & Marsden, P.C., Nashville, TN, for Debtor.

## *MEMORANDUM*

KEITH M. LUNDIN, Bankruptcy Judge.

The issue is whether federal income and self-employment taxes are a "consumer debt" for purposes of the codebtor stay in 11 U.S.C. § 1301. Because the taxes were incurred "for a personal, family, or household purpose," 11 U.S.C. § 101(8), the taxes are a consumer debt and collection from a codebtor is interrupted by § 1301. The following are findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

### I.

Wilbur G. Westberry filed Chapter 13 on November 5, 1997. The debtor and his nonfiling spouse jointly owed federal taxes for 1988 of $34,525.02. The debtor's plan proposed to pay the taxes in full in three years. The IRS began collection against the nonfiling codebtor by serving a notice of levy on her employer. The debtor filed a motion to enforce the codebtor stay. The IRS objected.

The tax debt relates only to income earned in 1988. In that year, the debtor was a self-employed insurance salesman. He incurred federal income and self-employment taxes on his earnings. All income earned in 1988 was used by the debtor and his wife for personal, family, or household purposes—to support themselves and their three dependents. No business assets were acquired in 1988, except perhaps a typewriter, and no money was spent on businesses, investments, or other profit-making activities.

## II.

■ The codebtor stay mandates "a creditor may not act ... to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor." 11 U.S.C. § 1301. Here, the IRS argues only that the codebtor stay is inapplicable because taxes are not a consumer debt.

The term "consumer debt" is defined in the Bankruptcy Code as a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). In various bankruptcy contexts, five circuit courts of appeals have applied a "profit motive" test to determine when a debt fits the definition of "consumer debt." [1] *See Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 149 (4th Cir.1996) (debts to former spouse were consumer debts for purposes of § 707(b)); *Citizens Nat'l Bank v. Burns (In re Burns)*, 894 F.2d 361, 363 (10th Cir.1990) (loan to fund stock market investments was not a consumer debt for purposes of § 523(d)); *In re Booth*, 858 F.2d 1051, 1054–55 (5th Cir. 1988) (loans to finance business ventures were not consumer debts for purposes of § 707(b)); *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir.1988) (for § 707(b) purposes, attorney fees for litigation serving a family or household purpose, loan assumed to acquire residence, and home equity loan incurred for home improvements and payment of credit card debts were consumer debts; loan to debtor's professional corporation secured by residence was not); *All Am. of Ashburn, Inc. v. Fox (In re Fox)*, 725 F.2d 661, 662–63 (11th Cir.1984) (debts to acquire commercial inventory were not consumer debts for purposes of § 523(d)).

As formulated by these courts, debts "incurred for business ventures or other profit-seeking activities" are not consumer debts. *Kelly*, 841 F.2d at 913; *see Burns*, 894 F.2d at 363; *Booth*, 858 F.2d at 1055; *Fox*, 725 F.2d at 662–63. Conversely, debt "not incurred with a profit motive or in connection with a business transaction" is consumer debt. *Kestell*, 99 F.3d at 149.

■ The U.S. District Court for the Middle District of Tennessee has adopted the profit motive test for identifying consumer debt in bankruptcy cases. In *Dominion Bank v. Manning (In re Manning)*, 126 B.R. 984, 989 (M.D.Tenn.), *remanded to vacate as moot*, 1991 WL 628883 (6th Cir. Sept. 30), *vacated as moot* (M.D.Tenn. Oct. 11, 1991), Judge Wiseman used the profit motive test in a § 707(b) case to determine that *"under no circumstances* may a loan procured to purchase a limited partnership interest or commercial real estate *for investment* be held to be for a 'consumer' purpose." Because the investments in *Manning* were expenditures "for an expected return in the future," the debts incurred to make those investments satisfied the profit motive test and could not be consumer debts. *Id.*

■ The profit motive test is consistent with the plain language of § 101(8). The section states that the *purpose* for which a debt was incurred determines whether the obligation is a consumer debt. The use to which the proceeds of a debt are put by the debtor is substantial evidence of purpose in this context. *See, e.g., Booth*, 858 F.2d at 1055 ("[T]he district court correctly looked to the use to which the money was put" to determine whether three loans secured by the family residence were consumer debts.). A use that is without profit motive signals a personal, family, or household purpose—the signature of consumer debt under § 101(8) analysis.

■ Application of the profit motive test reveals that this debtor's tax liability is consumer debt. To determine the purpose of a tax debt, courts should analyze the entire transaction that produced the tax, including the use to which the debtor put the proceeds. The purpose of incurring this tax liability is best evidenced by the use to which the debtor put the income that was taxed. It is

---

1. The legislative history of § 101(8) indicates that the "definition [of consumer debt] is adapted from the definition used in various consumer protection laws." S.Rep. No. 95–989, at 22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808. The profit motive test originated in cases interpreting those same consumer protection laws. *See Citizens Nat'l Bank v. Burns (In re Burns)*, 894 F.2d 361, 363 (10th Cir.1990); *In re Booth*, 858 F.2d 1051, 1054–55 & n. 9 (5th Cir.1988).

undisputed that the debtor and his wife used all of their 1988 income to support their family and household. The earnings upon which the tax liability was imposed were not invested in any business or profit-seeking activity. The tax liability was incurred for a personal, family, or household purpose and is a consumer debt as defined by § 101(8).

■ The government cites cases holding that income taxes are not consumer debts. Many of these cases reason that because taxes are "involuntarily imposed" by the government for a public purpose,[2] taxes are not "incurred," as that term is used in § 101(8). *See, e.g., In re Brashers*, 216 B.R. 59, 60–61 (Bankr.N.D.Okla.1998); *In re Stovall*, 209 B.R. 849, 853–54 (Bankr.E.D.Va.1997); *In re Reiter*, 126 B.R. 961, 964 (Bankr.W.D.Tex. 1991).

■ Neither these courts nor the government explains why "incurred" should be interpreted to exclude tax liabilities in § 101(8), yet elsewhere in the Bankruptcy Code Congress repeatedly used the same word to describe that debtors and estates "incur" tax liabilities in the same manner as other debts. *See, e.g.*, 11 U.S.C. § 503(b)(1)(B)(i) ("any tax ... incurred by the estate"); 11 U.S .C. § 505(b) ("any unpaid liability of the estate *for* any tax incurred during the administration of the case"); 11 U.S.C. § 547(a)(4) ("a debt for a tax is incurred on the day when such tax is last payable").

More obviously, this reading of § 101(8) distorts the plain meaning of the word "incurred." Incur means "[t]o acquire or come into (something usually undesirable); sustain; ... [t]o become liable or subject to as a result of one's actions; bring upon oneself." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 916 (3d ed.1992). There is no predicate in the definition that only voluntary acquisitions are "incurred."[3] Quite the contrary—the synonym "sustain,"

which means "[t]o experience or suffer," telegraphs the usual use of the word "incurred," to convey the not-necessarily voluntary acquisition of a consequence. *Id.* at 1810.

Debtors routinely incur obligations that are debts for bankruptcy purposes but with respect to which there is no element of volition. For example, a judgment lien on a debtor's property is an involuntary debt in the same sense that taxes are an involuntary exaction on a debtor's income. Inheriting property subject to a mortgage creates a debt for bankruptcy purposes without volition on the debtor's part and with no conventional extension of credit to the debtor. There is no suggestion in the Bankruptcy Code that Congress intended to categorically exclude judgment liens or other involuntary debts from the reach of § 101(8). Congress did not modify "incurred" with "voluntary" in § 101(8). *Compare* 11 U .S.C. § 522(g) (*voluntary* transfer of property by debtor precludes exemption upon recovery by trustee). This court declines to impose that substantial limitation on the otherwise straightforward definition of consumer debt.

The government also cites cases concluding that tax liability is not consumer debt because it results from earning money rather than from consumption. *See, e.g., In re Greene*, 157 B.R. 496, 497 (Bankr.S.D.Ga. 1993); *Harrison v. Internal Revenue Serv. (In re Harrison)*, 82 B.R. 557, 558 (Bankr. D.Colo.1987).

■ Once again, Congress could have defined consumer debt with some reference to the form of the activity that produced the debt—consuming, for example. Congress could have limited § 1301 and/or § 101(8) to debts arising from a "consumer credit transaction"—a term of art well-understood to encompass only the acquisition of goods or services for a personal, family or household purpose.[4] Instead, the plain language of

---

**2.** The government's purpose in *imposing* taxes is irrelevant to § 101(8) analysis.

**3.** At some level, the debtor's choice to earn income was a voluntary act that included "becom[ing] liable or subject to" ("incurring") liability for the taxes that adhere to the income produced.

**4.** *See* 15 U.S.C. §§ 1602(h), 1603(1), 1692a(5). In the Consumer Credit Protection Act,

> [t]he adjective "consumer," used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services

§§ 101(8) and 1301 is broader and is not bound by the limitations in consumer credit regulatory statutes.

Looked at another way, the income that produced the tax debt in this case was consumed for personal, family or household use. This consumption by the debtor is logically indistinguishable from the consumption of the proceeds of a conventional loan. To be consistent, the cases that find separate purposes for the earning of income and for the tax debt thus incurred must also assign separate purposes to the act of making a loan (to get possession of someone else's money?) and the use of the loan proceeds. The nonsense that results only serves to emphasize that the purpose described in § 101(8) can be determined only by considering the entire transaction that produces the debt, not just the discrete components or acts within that transaction. *See Tower v. Moss*, 625 F.2d 1161, 1166–67 & n. 4 (5th Cir.1980) (requiring examination of "transaction as a whole and the purpose for which the credit was extended" under Truth in Lending Act); *see also Burns*, 894 F.2d at 363 (considering motivation for obtaining loan and use of loan proceeds); *Booth*, 858 F.2d at 1055 (considering use of loan proceeds, not just nature of loan); *Kelly*, 841 F.2d at 913 (same).

The tax liability in this case was incurred for a personal, family, or household purpose, and is a consumer debt. The codebtor stay of § 1301 is applicable to the IRS's efforts to collect from codebtor Kristina S. Westberry.

An appropriate order will be entered.

### ORDER

For the reasons stated in the Memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED, and DECREED that the debtor's Motion for Enforcement of Co–Debtor Stay, filed December 18, 1997, is GRANTED. The codebtor stay of 11 U.S.C. § 1301 is applicable to collection of the debt-

which are the subject of the transaction are primarily for personal, family, or household purposes.
15 U.S.C. § 1602(h). Consumer credit transactions do not encompass "extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to orga-

or's 1988 tax liability from Kristina S. Westberry.

IT IS SO ORDERED.

nizations." § 1603(1). Similarly, the Fair Debt Collection Practices Act defines debt as "any obligation ... of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).