*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0189P (6th Cir.)
File Name: 00a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: WILBUR G. WESTBERRY,

     *Debtor.*

_____

INTERNAL REVENUE SERVICE,

     *Appellee,*

v.

WILBUR G. WESTBERRY,

     *Appellant.*

No. 98-6779

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00438—Todd J. Campbell, District Judge.

Argued: February 1, 2000

Decided and Filed: June 6, 2000

Before: COLE and CLAY, Circuit Judges; BELL, District
Judge.*

---

    *The Honorable Robert Holmes Bell, United States District Judge for
the Western District of Michigan, sitting by designation.

---

**COUNSEL**

**ARGUED:** Mark H. Westlake, WESTLAKE & MARSDEN, Nashville, Tennessee, for Appellant.  A. Wray Muoio, TAX DIVISION, DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Mark H. Westlake, WESTLAKE & MARSDEN, Nashville, Tennessee, for Appellant.    A.  Wray  Muoio,  TAX  DIVISION, DEPARTMENT OF JUSTICE, Washington, D.C., David English Carmack, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee.

---

**OPINION**

---

R.  GUY  COLE,  JR.,  Circuit  Judge.    The  sole  issue presented in this appeal is whether federal income and self-employment taxes should be considered consumer debt for purposes of 11 U.S.C. § 1301, the codebtor stay set forth in the Bankruptcy Code.  For the reasons that follow, we hold that  these  taxes  are  not  consumer  debt  and,  therefore, AFFIRM the judgment of the district court.

**I.**

The  facts  are  stipulated  by  the  parties.    The  following version is taken from the decision of the bankruptcy court:

Wilbur G. Westberry filed Chapter 13 on November 5, 1997.  The debtor and his nonfiling spouse jointly owed federal taxes for 1988 of $34,525.02.  The debtor's plan proposed to pay the taxes in full in three years.  The IRS began  collection  against  the  nonfiling  codebtor  by serving a notice of levy on her employer.  The debtor filed a motion to enforce the codebtor stay.  The IRS objected.

same way), we do not believe our interpretation of the Bankruptcy Code need be constrained by the interpretation of an entirely different statute with a different purpose and history. *See, e.g., United States v. Meade*, 175 F.3d 215, 221 (1st Cir. 1999) (stating that "precedent teaches that the case for construing one statute in a manner similar to another is weakest when the two have significant differences and, here, the appellant seeks to compare plums with pomegranates") (internal citation omitted).[6]

### III.

For the forgoing reasons, we AFFIRM the district court's determination that income taxes should not be considered consumer debt for purposes of the § 1301 codebtor stay.

---

[6] Because we have determined that income taxes are not consumer debt under the § 1301 codebtor stay, we need not reach the issue of whether the Anti-Injunction Act, 26 U.S.C. § 7421(a), prevents enforcement of the codebtor stay on income taxes. See *In re Pressimore*, 39 B.R. at 244.

The tax debt relates only to income earned in 1988. In that year, the debtor was a self-employed insurance salesman. He incurred federal income and self-employment taxes on his earnings. All income earned in 1988 was used by the debtor and his wife for personal, family, or household purposes -- to support themselves and their three dependents. No business assets were acquired in 1988, except perhaps a typewriter, and no money was spent on businesses, investments, or other profit-making activities.

*In re Westberry*, 219 B.R. 976, 977 (Bankr. M.D. Tenn. 1998).

The bankruptcy court concluded that income taxes could be consumer debt for purposes of the codebtor stay and that, in this case, because the taxes were incurred "for a personal, family, or household purpose," the codebtor stay applied. *See Westberry*, 219 B.R. at 978-79. The IRS appealed.

The district court reversed the bankruptcy court, holding that the tax liability at issue was not consumer debt because it was not incurred, but "involuntarily imposed by the government for a public purpose" and resulted "from earning money rather than consumption." *IRS v. Westberry (In re Westberry)*, No. 3:98-0438 (M.D. Tenn. Nov. 4, 1998). Westberry now appeals the district court's decision.

### II.

The issue presented here, whether federal income taxes should be considered consumer debt for purposes of 11 U.S.C. § 1301, is a question of law, which we review de novo. *See Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993).

The codebtor stay provides that "a creditor may not act . . . to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor." 11 U.S.C. § 1301. Consumer debt is defined in the Bankruptcy Code as "debt incurred by an individual primarily for a

personal, family, or household purpose." 11 U.S.C. § 101(8). Westberry argues that the stay should apply to prevent the IRS from attempting to collect from his wife,[1] the codebtor on the 1988 taxes because, as stipulated, the money that should have been paid in taxes was used for family and household purposes.

This is an issue of first impression for our circuit as well as the federal courts of appeals in general. Almost without exception, the bankruptcy courts that have addressed this question have determined that tax debt should not be considered consumer debt for purposes of the codebtor stay. *See, e.g., In re Stovall*, 209 B.R. 849, 854 (Bankr. E.D. Va. 1997); *In re Dye*, 190 B.R. 566, 567 (Bankr. N.D. Ill. 1995); *In re Marshalek*, 158 B.R. 704, 706 (Bankr. N.D. Ohio 1993); *In re Greene*, 157 B.R. 496, 497 (Bankr. S.D. Ga. 1993); *Goldsby v. United States (In re Goldsby)*, 135 B.R. 611, 613-15 (Bankr. E.D. Ark. 1992); *In re Reiter*, 126 B.R. 961 (Bankr. W.D. Texas 1991); *Harrison v. Internal Revenue Service (In re Harrison)*, 82 B.R. 557, 558 (Bankr. D. Colo. 1987); *Pressimone v. Internal Revenue Service (In re Pressimone)*, 39 B.R. 240, 244 (N.D.N.Y. 1984). We find the weight of these opinions and their reasoning persuasive.

First, a tax debt is "incurred" differently from a consumer debt. Although it is true that tax debts may be incurred under the Bankruptcy Code, this incurrence is not voluntary on the part of the taxpayer. *See Reiter*, 126 B.R. at 964; *see also Marshalek*, 158 B.R. at 706 (stating that "volition is essential" to a classification as consumer debt in finding that a vehicular accident judgment was not consumer debt under Chapter 7). We may at least hope to choose to incur consumer debt; its certainty being nothing like death and taxes. *See* Letter from Benjamin Franklin to Jean-Baptiste Le Roy (Nov. 13, 1789).

---

[1] At the time of trial, the debtor and his wife had separated and maintained separate households.

the consumer protection statutes upon which the Bankruptcy Code's definition of consumer debt was derived. *See id.* at 1054-55. The profit motive analysis is used, and is clearly appropriate, to determine whether a debt falls outside the category of consumer debt. There is nothing inherent in this test, or direction from the Bankruptcy Code to suggest, that the test defines the *only* category of non-consumer debt. Therefore, while the profit motive analysis may assist in the determination of which debts are not consumer debt, it does not prohibit other debts from falling outside of the category of consumer debt. *See Marshalek*, 158 B.R. at 706 ("The profit motive test is normally applied to cases involving expenditures. . . . An inability to classify a particular debt as a business debt does not automatically relegate it to the status of consumer debt."). *But see Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 149 (4th Cir. 1996) (using the test to determine that because debt was not business debt, it was consumer debt).

Westberry also argues that income tax debt has been deemed personal debt for purposes of the Tax Code and, therefore, the same classification should hold under the Bankruptcy Code.[5] For example, he cites the IRS regulation that classifies interest on income tax debt as personal interest, which cannot be deducted, to support his argument. *See* 26 C.F.R. § 1.163.9T(b)(2)(i)(A). Absent any indication from Congress, *see, e.g., Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985) (using prior interpretations of an Fair Labor Standards Act provision to interpret language in the Age Discrimination in Employment Act because Congress showed detailed knowledge of the FLSA when enacting the ADEA) or obvious similarity of language or purpose between these statutory provisions, *see, e.g., Northcross v. Board of Educ. of the Memphis City Schs.*, 412 U.S. 427, 428 (1973) (noting that a similarity of language and a "common raison d'etre" indicate that two statutes should be interpreted in the

---

[5] Westberry does not argue that these statutes are in conflict, which would, of course, require us to interpret the statutes so as to give effect to each law.

that cases under these similarly worded statutes guide our analysis of this issue.[4] Congress did not indicate, through the legislative history of § 1301, whether it intended to include taxes under the codebtor stay.

This distinctive treatment of taxes under the Bankruptcy Code, as well as the distinctions between tax debt and consumer debt, indicate that the profit motive test, which was used by the bankruptcy court in this case, is not determinative of this issue. The profit motive test determines that debt is not consumer debt if the debt was "incurred with an eye toward profit." *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988). This test was derived from a similar test used under

---

are primarily for personal, family, or household purposes"); 15 U.S.C. § 1602(h) (defining, under the Truth in Lending Act, a "consumer loan" as "[a transaction] in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes").

[4]We note that at least two sister circuits have suggested that taxes should not be considered "debt" under the Fair Debt Collection Practices Act. For example, *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998), states:

> The [Fair Debt Collection Practices Act] defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). In determining that the personal property taxes at issue in this case are not "debts" within the meaning of the FDCPA, the district court relied principally upon the decision of the Court of Appeals for the Third Circuit in *Staub v. Harris*, 626 F.2d 275 (3d Cir. 1980). In *Staub*, the Third Circuit held that "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value. The relationship between taxpayer and taxing authority does not encompass that type of pro tanto exchange which the statutory definition envisages." *Id.* at 278. We agree with the district court that *Staub* is persuasive authority and is dispositive in this case.

Second, consumer debt is incurred for personal or household purposes, as stated in the statute, while taxes are incurred for a public purpose. *See Stovall*, 209 B.R. at 854 (stating that taxes are "imposed by a government for the public welfare" in the course of finding that unpaid personal property tax on the debtor's car was not consumer debt for purposes of the codebtor stay). The Supreme Court has long noted, in other contexts, the public purpose of the imposition of taxes. *See, e.g., Loan Assoc. v. Topeka*, 87 U.S. 655, 664 (1874) ("We have established . . . beyond cavil that there can be no lawful tax which is not laid for a public purpose.").

Third, taxes arise from the earning of money, while consumer debt results from its consumption. *See Greene*, 157 B.R. at 497; *Harrison*, 82 B.R. at 558; *Pressimone*, 39 B.R. at 244. Different events give rise to tax debt than to consumer debt – Westberry's obligation to the IRS arose from the earning of income, not from his expenditure on personal and family items.

Finally, unlike taxes, consumer debt normally involves the extension of credit.

The sum of these material differences leads us to conclude that Westberry's tax debts cannot be considered consumer debt for purposes of the § 1301 codebtor stay.

Westberry contends that *In re Whitelock*, 122 B.R. 582 (Bankr. D. Utah 1990) counsels us to decide otherwise. We disagree. In *Whitelock*, the debtor took out a loan from First Security Financial (FSF), secured by his mother's single family home, to pay an IRS liability. *See id.* at 584. The debtor then took out a second note to pay off the first note; this second note was secured by a deed of trust on the same residence. *See id.* at 585-86. The debtor filed for bankruptcy under Chapter 13 approximately three months later. *See id.* The bankruptcy court found that these obligations secured by real property may be considered consumer debt, despite some language in the legislative history of § 101(7) – the precursor to § 101(8) -- which states that consumer debt does not include debt secured by real property. *See id.* at 587 (quoting

124 Cong. Rec. H11,090 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong. Rec. S17,406 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini)).   The court looked to the purpose of the debt, concluding that the second loan, which was used to pay off the first loan that payed the IRS debt, served "a family or household purpose." *Id.* at 587. The court assumed that the debt was either consumer or business and, because there was "no substantial indication that the repayment of the FSF debt was in any manner business related," it was, therefore, consumer debt. *Id. Whitelock* is distinguishable from the present case because the debt was only indirectly incurred to cover the IRS liability, not directly incurred as in this case. Further, *Whitelock*, in dictum, approvingly quotes two cases which find that tax debt is not consumer debt. *See Whitelock*, 122 B.R. at 587 n.8 (citing *Harrison*, 82 B.R. at 558; *Pressimone,* 39 B.R. at 245).

In order to determine the meaning of consumer debt, we also examine the "language and design of the statute as a whole." *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999).[2]    Throughout the Bankruptcy Code, Congress has

---

[2]This court has not interpreted the "consumer debt" language of the Bankruptcy Code, even in other contexts within the Code. *See Cohen v. De la Cruz*, 523 U.S. 213, 220 (1998) (noting the "presumption that equivalent words have equivalent meaning when repeated in the same statute").   Our sister circuits have examined the "consumer debt" language, as applied to other sections of the Code, but not with respect to tax debts. *See Stewart v. United State Trustee* (*In re Stewart*), 175 F.3d 796 (10th Cir. 1999) (finding that a Chapter 7 debtor's funds were put to household living expenses and, therefore, were consumer debts); *Kestell v. Kestell* (*In re Kestell*), 99 F.3d 146 (4th Cir. 1996) (determining, under a profit motive test, that money owed to the debtor's former wife from a divorce judgment was consumer debt for purposes of § 707); *Burns v. Citizens Nat'l Bank* (*In re Burns*), 894 F.2d 361 (10th Cir. 1990) (finding that loans taken out to play the stock market were not consumer debt, for purposes of determining whether attorney fees should be provided under 11 U.S.C. § 523(d)); *Zolg v. Kelly* (*In re Kelly*), 841 F.2d 908, 913 (9th Cir. 1988) (finding, in a § 707(b) case, that attorney fees were consumer debt because the suit was begun "for the purpose of recovering money allegedly overpaid in purchasing their home"); *In re Booth*, 858 F.2d 1051 (5th Cir. 1988).   These cases do not change or detract from our analysis.

---

clearly treated tax debt differently from other debts, including consumer debt.   For example, certain tax debts are not dischargeable in bankruptcy, based partially on an assessment of the importance of the collection of tax revenue. *See* 11 U.S.C. § 523(a)(1) (nondischargeability of certain tax debts); *see also* 146 Cong. Rec. S167-05 at *S178 (daily ed. Feb. 1, 2000) (statement of Sen. Levin) (quoting National Bankruptcy Review Commission Final Report, Chapter 1:   Consumer Bankruptcy (1997)) ("Other debts are excepted from discharge because of the inherent nature of the obligation, without regard to any culpability of the debtor.   Regardless of the debtor's good faith, for example, . . . many tax claims remain nondischargeable.   Society's interest in excepting those debts from discharge outweigh the debtor's need for a fresh economic start."); *Bruning v. United States*, 376 U.S. 358, 361 (1964) (noting, in the context of an application of a provision of the prior Bankruptcy Code relating to tax debt, that the provision "demonstrates congressional judgment that certain problems -- e.g., those of financing government -- override the value of giving the debtor a wholly fresh start."). In addition, tax debts are given a privileged status relative to certain other debts. *See, e.g.*, 11 U.S.C. § 507(a)(8).

We note that although we have analyzed whether taxes are consumer debt based on the plain language and meaning of the statute, *see Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912 (9th Cir. 1988) (stating that consumer debt capable of plain meaning interpretation); *Reiter*, 126 B.R. 961, 964 (finding no need to resort to legislative history to determine if taxes were consumer debt under § 1301), even if we were to find the statutory language ambiguous, the legislative history is not decisive of this issue.   The Bankruptcy Code's definition of "consumer debt" is derived from consumer protection laws. *See* S. Rep. No. 95-989 at 22 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5808.[3]   Westberry makes no argument

---

[3]*See* 15 U.S.C. § 1692(a) (defining "debt," under the Fair Debt Collection Practices Act, as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction