**In re Matthew Todd STRAUSBAUGH, Debtor.**

**Andrew Swartz, et al., Plaintiffs,**

v.

**Matthew Todd Strausbaugh, Defendant.**

Bankruptcy No. 05–78125.

Adversary No. 06–2247.

United States Bankruptcy Court, S.D. Ohio, Eastern Division, at Columbus.

Sept. 18, 2007.

---

Benjamin W. Ogg, Patrick H Boggs, Onda, LaBuhn & Rankin Co., LPA, Columbus, OH, for Plaintiffs.

Michael T. Gunner, Hilliard, OH, Michael R. Szolosi, Jr., Columbus, OH, for Defendant.

### *MEMORANDUM OPINION AND ORDER DENYING DEFENDANT, MATTHEW STRAUSBAUGH'S, MOTION FOR AN AWARD OF ATTORNEY FEES AND COSTS UNDER § 523(d) AND BANKR. R. 9011*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

Plaintiff Andrew Swartz ("Swartz") initiated this adversary proceeding to determine the dischargeability of a debt owed by Matthew Strausbaugh ("Strausbaugh"), the debtor and Swartz's former business associate. In the original complaint ("Complaint") (Doc. 1), Swartz alleged that debts allegedly owed to him by Strausbaugh were excepted from discharge by 11 U.S.C. § 523(a)(2), (3), (4) and/or (6). The Complaint was amended ("Amended Complaint") (Doc. 13) to add Central Ohio Custom Carpentry, LLC ("COCC") as a sec-

ond plaintiff. In the Amended Complaint, Swartz and COCC (collectively, "Plaintiffs") asserted claims for, among other things, fraud, fraudulent misrepresentation/inducement, forgery, embezzlement and breach of fiduciary duty. Plaintiffs alleged in the Amended Complaint that the debts arising from these claims were nondischargeable under § 523(a)(2), (3), (4) and/or (6). The Amended Complaint was ultimately dismissed by agreed order entered May 18, 2007 ("Agreed Order") (Doc. 29).

■ Section 523(d) of the Bankruptcy Code provides that, under certain circumstances, costs and attorney fees may be recovered by the debtor from a creditor who is unsuccessful in an action brought to except a consumer debt from discharge under § 523(a)(2) of the Bankruptcy Code. *See* 11 U.S.C. § 523(d). Strausbaugh now seeks an award of the costs and attorney fees he incurred in defending the adversary proceeding. As explained below, because the debt at issue was incurred in connection with the joint business venture between Swartz and the Plaintiffs, it is not consumer debt, and, accordingly, § 523(d) is inapplicable. Strausbaugh is therefore not entitled to recover his costs and attorney fees.

## I. *Jurisdiction*

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## II. *Factual and Procedural Background*

This adversary proceeding arises from a failed business relationship. In August 2003, Swartz and Strausbaugh formed COCC, a limited liability company that operated until it was voluntarily dissolved in February 2005. Strausbaugh filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 16, 2005.

Swartz filed the original Complaint on March 10, 2006, seeking a determination by the Court that debts allegedly owed to him by Strausbaugh were not dischargeable under § 523(a)(2), (3), (4) and (6). As noted above, Swartz asserted claims for, among other things, fraud, fraudulent misrepresentation/inducement, forgery, embezzlement and breach of fiduciary duty, alleging that the debts arising from such claims were nondischargeable.

Strausbaugh filed a motion to dismiss all counts contained in the Complaint under Fed.R.Civ.P. 9(b), 12(b)(1) and (6), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7009 and 7012, respectively. The Court conducted a hearing on August 14, 2006, and, after hearing the arguments of counsel and considering the pleadings filed, rendered an oral ruling granting in part and denying in part the motion to dismiss.[1] The Court also granted Swartz leave to amend the Complaint.

---

1. In its oral ruling, and as memorialized in an agreed order entered on September 19, 2006 (Doc. 10), the Court found that Swartz lacked standing to assert claims on behalf of COCC. The Court dismissed the claims for fraud, fraudulent omission, embezzlement, conversion, and breach of fiduciary duty, subject to Swartz's right to amend. The Court granted Swartz leave to amend the Complaint to properly assert the claim for embezzlement on his own behalf. The Court also granted leave to Swartz to amend the claims for forgery—to specify how he was damaged and in what amount; for fraudulent misrepresentation/inducement—to plead this claim with more particularity; and for non-dischargeability under § 523—to more particularly plead the underlying bases for this claim. The Court also granted Swartz leave to amend the Complaint

On November 20, 2006, Swartz and COCC—as a new party plaintiff—filed the Amended Complaint. In the Amended Complaint, Plaintiffs sought a determination that debts owed to them were non-dischargeable under § 523(a)(2)(A), (4) and (6). Plaintiffs requested damages in an amount exceeding $179,543.81 (with the exact amount to be determined at trial), plus punitive damages, attorney fees, and costs, and requested that the Court deem the damage award non-dischargeable.

Strausbaugh again filed a motion to dismiss the Amended Complaint under Fed. R.Civ.P. 9(b) and 12(b)(6) ("Motion to Dismiss"). The Court made a second oral ruling, holding that the claims of COCC were barred by the statute of limitations, equitable tolling was unavailable to extend the statute of limitations, and the Amended Complaint did not relate back to the date of the original Complaint. The Court granted the Motion to Dismiss as to all counts asserted by COCC.

As to those claims asserted by Swartz, the Court dismissed the part of Count Two related to fraud or defalcation while acting in a fiduciary capacity, but held the Motion to Dismiss in abeyance as to the remaining counts. The Court allowed Swartz one final opportunity to amend the Amended Complaint as to the remaining counts: Count One for false pretenses, false representation or actual fraud under § 523(a)(2)(A), Count Two for embezzlement under § 523(a)(4) and Count Three for willful and malicious injury under § 523(a)(6).

By correspondence dated May 4, 2007 (Doc. 26), Swartz informed the Court of his decision not to file a second amended com-

plaint. Strausbaugh renewed his Motion to Dismiss, and the action was subsequently dismissed, with prejudice, pursuant to the Agreed Order.

Strausbaugh now moves for an award of his attorney fees and costs under § 523(d). Before the Court are (1) Defendant, Matthew Strausbaugh's, Motion for an Award of Attorney Fees and Costs Under § 523(d) and Bankr.R. 9011 (Doc. 28); (2) Response of Plaintiffs, Andrew Swartz and COCC, to Defendant, Matthew Strausbaugh's, Motion for an Award of Attorney Fees and Costs Under § 523(d) and Bankr.R. 9011 (Doc. 31); and (3) Defendant, Matthew Strausbaugh's, Reply Memorandum Supporting his Motion for an Award of Attorney Fees and Costs Under § 523(d) ("Reply") (Doc. 32).[2]

### III. *Legal Analysis*

■ Under the American Rule, parties to litigation generally must bear their own attorney fees, unless a statute or enforceable contract between the parties provides otherwise. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* —— U.S. ——, 127 S.Ct. 1199, 1203, 167 L.Ed.2d 178 (2007). One such statute that authorizes the shifting of attorney fees is § 523(d), which provides as follows:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs

to assert, on behalf of COCC, the other claims that were dismissed.

**2.** Strausbaugh initially moved for an award of attorney fees and costs under both § 523(d)

and Bankruptcy Rule 9011. In the Reply, Strausbaugh withdrew his motion for sanctions under Rule 9011 and elected to proceed solely under § 523(d).

and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).

■■■ To prevail on a motion for costs and attorney fees under § 523(d), a debtor must establish that " '(1) the creditor requested a determination of the dischargeability of the debt [under § 523(a)(2) ], (2) the debt is a consumer debt, and (3) the debt was discharged.' " *Am. Sav. Bank v. Harvey (In re Harvey)*, 172 B.R. 314, 317 (B.A.P. 9th Cir.1994) (citation omitted) (quoting *FCC Nat'l Bank v. Dobbins*, 151 B.R. 509, 511 (W.D.Mo.1992)); *Colabianchi v. Thomas (In re Thomas)*, 258 B.R. 167, 168 (Bankr.N.D.Ohio 2001). Once the debtor establishes these three elements, the burden then shifts to the creditor to prove either that its position was substantially justified or that special circumstances exist that would make an award of costs and attorney fees unjust. *Thomas*, 258 B.R. at 168.

The original Complaint was based in part on § 523(a)(2)(A). The Amended Complaint, which added COCC as an additional plaintiff, also sought a determination of nondischargeability under § 523(a)(2)(A), asserting that Strausbaugh had "obtained money, property and services from Swartz and COCC by false pretenses, false representations and actual fraud." Amended Compl. ¶ 31. The parties entered into the Agreed Order dismissing the Amended Complaint, with prejudice, thereby eliminating the possibility that the debt in question would be excepted from discharge. Thus, there is no dispute that Strausbaugh has carried his burden as to the first and third elements required by § 523(d). The remaining issue is whether the debt owed by Strausbaugh to Plaintiffs is a "consumer debt" within the meaning of § 523(d).

■■■ The Bankruptcy Code defines a "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The term "consumer debt" is used throughout the Bankruptcy Code. *See generally* 11 U.S.C. § 524(c)(6)(B) (excepting consumer debts secured by real estate from reaffirmation requirements); 11 U.S.C. § 707(b)(1) (providing for dismissal of cases filed by individual debtors under Chapter 7 "whose debts are primarily consumer debts" for substantial abuse); 11 U.S.C. § 1301(a) (staying actions against a co-debtor to collect consumer debt). "[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932). It is therefore appropriate to consider cases construing other sections of the Code in which the term "consumer debt" is used. *Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744, 746–47 (4th Cir. 1996).

The debt in this case arises from the business relationship between Swartz, Strausbaugh, and their company COCC. According to the Amended Complaint, Strausbaugh continued to operate his original business—Custom Exterior Trim—after forming COCC, and eventually formed and operated a second limited liability company, Automated Vision, LLC. Plaintiffs alleged that these two entities were in direct competition with COCC. Plaintiffs also alleged that Strausbaugh abused his position as sole managing member of COCC to defraud both Swartz and COCC and to divert COCC resources to non-COCC uses. Specifically, the following allegations, among others, were set forth in the Amended Complaint: (1) Swartz expended $20,052.81 in services and materials for what he thought were COCC projects, but were in fact Custom Exterior

Trim projects (¶ 33); (2) Custom Exterior Trim collected $75,575.06 from COCC customers for work performed by COCC (¶ 36); (3) Strausbaugh used COCC funds to purchase $19,787.57 in materials for Custom Exterior Trim projects and provided $7,082.12 in labor and materials to Automated Vision projects (¶ 37); (4) Strausbaugh paid COCC subcontractors $11,946.50 from COCC funds for work performed on non-COCC projects (¶ 21); (5) Strausbaugh used $17,853.76 in labor and materials supplied by COCC to perform renovations at 1818 Jupiter Avenue, a property owned by Strausbaugh's girlfriend where he also resided ("Jupiter Property") (¶ 37); and (6) Strausbaugh withdrew from COCC and paid to himself $23,111 more than he paid Swartz after agreeing to share profits equally (¶ 38). In addition, the Amended Complaint alleged that Strausbaugh used COCC funds to pay the following personal expenses: $1,883.52 on his credit card, $685.65 for maintenance of his personal vehicle, and $782.82 to pay a personal car loan (¶ 39). Plaintiffs sought damages in the amount of $179,543.81, and requested a judgment from the Court declaring this debt nondischargeable under § 523(a)(2), (4) and (6).

The great majority of the alleged debt— approximately $157,000—arises from business transactions between COCC and other business entities, i.e., Custom Exterior Trim, Automated Vision, or their customers. The transactions in question primarily involved payments for labor and materials related to contracting work and were made by Strausbaugh while engaged in operating the business (or businesses). This debt was not incurred primarily for a personal, family, or household purpose and, therefore, is not consumer debt.

■ According to Strausbaugh, because a portion of the debt—approximately $18,000—relates to home improvements performed by COCC at the Jupiter Property, the debt should be characterized as consumer debt and § 523(d)'s attorney fee provision should apply. He argues that "[s]ince the alleged debt had nothing to do with any profit motive, but rather was primarily for supporting his family by improving the home in which they were all living, a significant amount of Plaintiffs' asserted debt constitutes a 'consumer debt.'" Reply at 2. Strausbaugh also maintains that because Plaintiffs themselves referred to Strausbaugh's use of COCC funds for "personal purposes" in the original and Amended Complaint, they cannot now credibly claim that the debt is not consumer debt. Reply at 3.

Strausbaugh's first argument rests on what has been referred to in the caselaw as the "profit motive test." When analyzing whether a debt is a consumer debt, courts have commonly applied the this test, holding that if the debt was incurred "with an eye toward profit[,]" it should be classified as a business debt and not as a consumer debt. *IRS v. Westberry (In re Westberry)*, 215 F.3d 589, 593 (6th Cir. 2000); *In re Booth*, 858 F.2d 1051, 1054–55 (5th Cir.1988).

■ Strausbaugh's reliance on the profit motive test in this case, however, is misplaced.

The profit motive analysis is used, and is clearly appropriate, to determine whether a debt falls outside the category of consumer debt. There is nothing inherent in this test, or direction from the Bankruptcy Code to suggest, that the test defines the *only* category of nonconsumer debt. Therefore, while the profit motive analysis may assist in the determination of which debts are not consumer debt, it does not prohibit other debts from falling outside of the category of consumer debt.

*Westberry,* 215 F.3d at 593 (considering whether income tax debts should be considered consumer debts for purposes of determining the applicability of the co-debtor stay under 11 U.S.C. § 1301). *See also In re Marshalek,* 158 B.R. 704, 708 (Bankr.N.D.Ohio 1993) ("The profit motive test is normally applied to cases involving expenditures.... An inability to classify a particular debt as a business debt does not automatically relegate it to the status of a consumer debt."). Under the rationale of *Westberry,* the mere fact that the debtor did not incur debt with an eye toward profit does not necessarily result in classification of the debt as a consumer debt.

In *Westberry,* the Sixth Circuit distinguished the characteristics of tax debt and a consumer debt. The court noted in its analysis that a "consumer debt is incurred for personal or household purposes." *Westberry,* 215 F.3d at 591. The *Westberry* court also pointed out that a tax debt "is 'incurred' differently from a consumer debt[,]" reasoning that "taxes arise from the earning of money, while consumer debt results from its consumption. Different events give rise to tax debt than to consumer debt—*Westberry's obligation to the IRS arose from the earning of income, not from his expenditure on personal and family items." Id.* (emphasis added) (citations omitted). Lastly, the court stated that "unlike taxes, consumer debt involves the extension of credit." *Id.*

Strausbaugh asserts that part of the alleged debt owed to Plaintiffs was used to perform work on his residence (approximately $18,000) and for the payment of certain of his personal expenses (approximately $3,300) and, therefore, constitutes consumer debt. These debts, however, arose from actions taken by Strausbaugh as the managing member of COCC. He directly caused COCC resources—over which he had primary control—to be ex-

pended on the Jupiter Property and to pay various personal expenses. Like the tax debt in *Westberry,* this debt did not arise from his expenditure on personal, household or family items. Rather, the debts listed in the Amended Complaint were allegedly incurred by Strausbaugh in his capacity as the managing member of COCC. According to the Amended Complaint, the debts arose from Strausbaugh's wrongful diversion of funds belonging to COCC to his personal use (approximately $21,300) and to the use of business entities he controlled—Custom Exterior Trim and Automated Vision—(approximately $157,000). The debts in question thus arose in the context of a business relationship between the parties in which Plaintiffs and Strausbaugh had a profit motive. In short, the fact that a small portion of the COCC funds that allegedly were wrongfully diverted by Strausbaugh were put to his personal use does not call for the Court to characterize indebtedness incurred in connection with a business venture as a consumer debt for purposes of determining § 523(d)'s applicability.

Moreover, the debt in question did not involve Strausbaugh obtaining an extension of credit as a consumer. *See Westberry,* 215 F.3d at 591 (noting that a consumer debt "normally involves the extension of credit" to a consumer). Section 523(d) was enacted to prevent "the abusive practices of consumer finance companies, who often filed bad faith dischargeability actions in the knowledge that the financially straitened debtor would be forced to settle the claim, rather than bearing the expense of a trial on the merits." *All Am. of Ashburn, Inc. v. Fox (In re Fox),* 725 F.2d 661, 663 (11th Cir.1984). There is no suggestion that this type of creditor misconduct was involved here. Rather, in this case, a business owner has allegedly manipulated business assets for the benefit of

himself and entities he controlled, causing financial harm to his business partner and the limited liability company that they founded (COCC). No extension of consumer credit was involved. Thus, the Court concludes that the debts in question are not consumer debts as that term has been defined in the caselaw interpreting § 523(d). Strausbaugh accordingly is not entitled to recover his attorney fees and costs.

Even if the Court were to accept Strausbaugh's argument that approximately $21,300 of the total indebtedness (of approximately $179,000) was in fact consumer debt, its determination would remain unchanged. Under § 101(8) of the Bankruptcy Code, a "consumer debt" is one that is incurred *primarily* for personal, family, or household purposes. 11 U.S.C. § 101(8). Here, even assuming for the sake of argument that approximately $21,300 of the total indebtedness was consumer debt, the predominant portion of the debt was incurred for a business purpose and, thus, must be classified as business rather than consumer debt.

 The court in *Monroe Bank & Trust v. Nowatzke (In re Nowatzke)*, 318 B.R. 400 (Bankr.E.D.Mich.2004), reached the same conclusion in a case involving a similar fact pattern—one in which the debtor, like the Plaintiffs here, argued that the debt in question included consumer and business components. In *Nowatzke,* the debtor had successfully defended the bank's dischargeability action under § 523(a)(2) and moved for attorney fees

under § 523(d). The debt at issue was evidenced by seven promissory notes totaling $1,427,700. All of the notes were used for business purposes except one, in the amount of $230,000, which was used to make a down payment on a house. *Nowatzke,* 318 B.R. at 402–03. Rejecting the debtor's request for recovery of fees and costs under § 523(d),[3] the *Nowatzke* court reasoned:

> Section 101(8) requires that the court consider the purpose for which the debt was incurred, and where the debt was incurred for more than one purpose, deems that the primary purpose of the debt will determine its nature. *See* 2 Collier on Bankruptcy ¶ 101.08, at 101–47 (Lawrence P. King ed., 15th ed. rev. 2004) ("If a debt is incurred partly for business purposes and partly for personal, family or household purposes, the term 'primarily' in the definition suggests that whether the debt is a 'consumer debt' should depend upon which purpose predominates. Presumably, this determination would normally turn on the purpose for which most of the funds were obtained." (footnote omitted)).

*Id.* at 403 (quoting *Stewart v. United States Tr. (In re Stewart )*, 215 B.R. 456, 465 (10th Cir. BAP 1997)). Because the promissory note represented only 16% of the total debt, the *Nowatzke* court found that the debt was not incurred primarily for a personal, family, or household purpose. *Id.* The court concluded that the debt did not constitute a consumer debt

---

**3.** Although the court in *Nowatzke* declined to grant the debtor's motion for fees and costs under § 523(d), it nevertheless awarded fees and costs to the debtor, invoking its inherent authority to assess fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Nowatzke,* 318 B.R. at 403 (quoting *Alyeska Pipeline Serv. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct.

1612, 44 L.Ed.2d 141 (1975) (internal quotation marks omitted)). The creditor in *Nowatzke* and/or its attorney had pressured an employee to give false testimony at the dischargeability proceeding, which resulted in the bankruptcy court vacating its judgment in favor of the creditor and granting the debtor's motion for a new trial. *See id.* at 403–05.

and, thus, "the requirements [of] § 523(d) [were not] satisfied." *Id.* at 403.

As in *Nowatzke,* the predominant part of the debt asserted by the creditor to be nondischargeable under § 523(a)(2) was incurred for business rather than personal purposes. Here, most of the funds obtained by Strausbaugh—88%—were used for business purposes (i.e., to support the operations of Strausbaugh's other businesses). Thus, both the express language of § 101(8) and the rationale and holding of the *Nowatzke* decision counsel against a determination that the debt in issue is anything other than a business debt.

 Strausbaugh also argues that because Swartz alleged in the Amended Complaint that certain expenditures were "personal" in nature, he cannot now claim that such expenditures gave rise to something other than a consumer debt. A similar argument was advanced in *American Express Travel Related Services Co. v. Baker (In re Baker),* 213 B.R. 834, 836–37 (N.D.Ill.1997). In *Baker,* the debtor admitted that the debt at issue was a business debt, but argued that § 523(d) required only that the creditor *allege* that the debt at issue was a consumer debt. According to the debtor in *Baker,* "even if the alleged 'consumer debt' is later found to be some other sort of debt (for example, a business debt), the debtor should be able to recover attorney fees under the statute." *Id.* at 836–37. The court interpreted the statute more narrowly, however, determining that use of the term "consumer debt" in § 523(d) "protects debtors who buy goods and services for their personal maintenance rather than debtors who incur debt in order to earn a profit." *Id.* at 837. Had Congress intended to protect other types of debts, the *Baker* court reasoned, it presumably would not have modified the word "debt" with "consumer." *See id.* "If the [legislative] intent was to pro-

tect other types of debt, surely the generic word 'debt' would have been used." *Id.* Thus, the court in *Baker* rejected the debtor's contention that a "mischaracterization of the debt as 'consumer debt' [in a creditor's dischargeability complaint] is sufficient to render [the creditor] liable for attorney fees...." *Id.* To so hold, the *Baker* court concluded, "would ... chill creditors from making potentially viable claims." *Id.*

Thus, contrary to Strausbaugh's contention, the fact that Swartz described the debts as "personal" in the Amended Complaint, without more, is insufficient to impose liability for fees and costs under § 523(d). The allegations contained in the Amended Complaint, therefore, are not determinative of whether the debt at issue is a consumer debt. Having failed to establish that the debt the Plaintiffs sought to except from discharge is a consumer debt, Strausbaugh is not entitled to an award of attorney fees and costs under § 523(d).

## IV. *Conclusion*

For the foregoing reasons, the Court finds that the Strausbaugh has not met his burden of establishing that the debt in question is a consumer debt. Thus, the Court need not consider whether the Plaintiffs' position was substantially justified or whether special circumstances would make an award of attorney fees and costs unjust. Strausbaugh's Motion for an Award of Attorney Fees and Costs is **DENIED.**

**IT IS SO ORDERED.**